IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

UNITED STATES OF AMERICA,          *

vs.                                *
                                        CASE NO. 4:13-cr-24 (CDL)
LORENZO HICKSON,                   *

    Defendant.                   *

_____

<u>O R D E R</u>

Defendant Lorenzo Hickson filed a motion to suppress the introduction of illegal drugs seized after a traffic stop.  He contends that the traffic stop was unreasonably extended without probable cause or reasonable suspicion and thus became an unconstitutional search and seizure in violation of the Fourth Amendment.  For the following reasons, the Court agrees that the traffic stop was unreasonably extended without probable cause or reasonable suspicion, but the Court disagrees that the drugs seized after Defendant fled from the scene in the vehicle and threw them out the window onto the public highway must be suppressed.  Accordingly, Defendant's Motion to Suppress (ECF Nos. 11 & 12) is denied.

FACTUAL FINDINGS

The facts surrounding the initial stop of Defendant's vehicle are largely undisputed.[1]  On a clear, sunny October afternoon, Defendant was driving a black Nissan on I-185 South in Harris County, Georgia.  Myesha Weeks was riding in the passenger seat.  At the same time, Harris County Deputy Roger Carroll was parked in the median of I-185 observing traffic for alleged moving violations and for possible drug interdiction.  Parked alongside Deputy Carroll in the median in a separate law enforcement vehicle was Deputy Joe Harmon, a canine officer with the Harris County Sheriff's Office.  Zoe, a drug-sniffing dog, accompanied Deputy Harmon in his vehicle.

At approximately 2:40 P.M., Deputy Carroll observed Defendant's vehicle make an abrupt lane change upon passing Deputy Carroll's and Deputy Harmon's parked vehicles.  Deputy Carroll decided to pursue Defendant's vehicle.[2]  As Deputy Carroll followed Defendant's vehicle, he observed the vehicle traveling at approximately sixty-five to seventy miles per hour within one to two car lengths of the vehicle immediately in front of it.  Based on this observation, Deputy Carroll decided

---

[1] The Court held an evidentiary hearing on September 4, 2013 and a supplemental hearing on December 17, 2013.  The Court's factual findings are based on evidence introduced at those hearings.
[2] When Deputy Carroll began his pursuit, the dashboard camera in his vehicle activated.  The entire pursuit and encounter were recorded. The Court's findings regarding the times for certain acts are based upon the time reflected on the recording.

to make a traffic stop because Defendant's vehicle was following the vehicle in front of it too closely.  Defendant's vehicle pulled into the emergency lane, coming to a stop at approximately 2:42 P.M.

Deputy Carroll exited his vehicle and approached Defendant's vehicle.  He informed Defendant that he pulled him over for "following too close."  Both Defendant and his passenger, Weeks, appeared "very nervous."   Weeks identified Defendant as her brother.  Deputy Carroll obtained information from the vehicle's tag and from Defendant's license, which was routine procedure for traffic stops arising from moving violations.  He relayed the information to the dispatch officer who ran a check on the tag and the license.  The license check revealed that Defendant was on parole for a criminal offense.  But the checks were otherwise unremarkable.  Deputy Carroll had this information by 2:48 P.M.  As of that time, he had all of the information he needed to issue a citation for following too closely.  Thirty seconds later, he completed the "warning citation" for the traffic violation.

Up until this time, Deputy Carroll did not have a reasonable suspicion to believe that Defendant's vehicle contained illegal contraband.  He thought the situation looked "fishy" and had a "hunch" that something illegal might be in the vehicle based upon the demeanor ("nervousness") of the Defendant

and his passenger.   After he learned that Defendant was on parole, Deputy Carroll summoned Deputy Harmon to the scene to do a canine search on the outside of the vehicle.   He made the call at approximately 2:51 P.M.

After Deputy Carroll completed the process for the traffic citation and before Deputy Harmon arrived at 2:54 P.M., Deputy Carroll had Defendant exit the vehicle.   He began asking Defendant and Weeks questions unrelated to the traffic citation. He asked Defendant for consent to search the vehicle, which Defendant refused.   He frisked Defendant for weapons and found nothing except for $500 in cash.   He questioned Defendant about his employment.   At approximately 2:56 P.M., Weeks stepped out of the vehicle.   Deputy Carroll asked for her identification and ran a license check on her.   He also explained that he was involved in "drug interdiction."   Weeks retrieved her purse, a sweater, and a bag from the rear seat of the car.   Deputy Carroll sought consent to search the items, but Weeks declined. Deputy Carroll then directed her to return the items to the vehicle, contending that he did so for officer safety.   It was later discovered that the bag Weeks retrieved from the car, which she subsequently returned to the car at Deputy Carroll's direction, contained the illegal drugs that Defendant seeks to suppress.   After the items were returned to the car, Deputy Carroll informed Defendant and Weeks that the drug dog would

conduct a sniff surveillance of the vehicle. Upon being informed of the search and that the deputies were not interested in arresting them for small quantities of drugs, Weeks stated that she had a small amount of marijuana in her purse.

At approximately 3:00 P.M., Deputy Harmon conducted the canine search. During that search, Defendant ran to the car, entered it, and attempted to flee. Approximately eighteen minutes elapsed between the time Deputy Carroll stopped Defendant's vehicle and the time Defendant attempted to flee. Defendant's detention was prolonged approximately twelve minutes due to Deputy Carroll's suspicions that the vehicle contained illegal contraband. Had Deputy Carroll simply given Defendant the warning for following too close, Defendant would have been detained approximately six minutes. Instead, it took approximately eighteen minutes to begin the canine search of the vehicle.

As Defendant began to flee, Deputy Harmon jumped through the open passenger-side window and wrestled with Defendant while the car traveled down the highway. He ultimately caused Defendant to stop the vehicle. Deputy Carroll chased the car on foot and indicated at the scene that he saw something being thrown from the car. After the deputies secured Defendant, they found a brown paper bag outside the right passenger door of the car on the public highway. The deputies recovered the bag and

discovered that it contained what the Government alleges to be cocaine base. It appears undisputed for purposes of the present motion that the bag containing the cocaine base is the same bag that Weeks removed earlier from the car and returned to the car after being directed to do so by Deputy Carroll.

A genuine factual dispute exists as to how the bag containing the drugs got from inside Defendant's car onto the public roadway. Neither Deputy Carroll nor Deputy Harmon actually saw Defendant throw the bag out of the passenger side window. But persuasive circumstantial evidence supports that conclusion. The bag was in the vehicle when Defendant fled the scene. The bag was either on the front passenger seat or just behind the front passenger seat. The bag was within reach of the Defendant as he drove the car. Even if one of his arms was partially pinned down by Deputy Harmon during the tussle, Defendant still retained the capability to reach a bag located on either the front passenger seat or directly behind that seat. Deputy Carroll saw something being thrown out of the passenger window, and Deputy Harmon saw Defendant reaching for something in the area of the passenger side of the car. Only Deputy Harmon and the Defendant were in the car. No one else could have thrown anything from the vehicle. The Court found Deputy Carroll and Deputy Harmon to be credible witnesses. The location of the bag in relationship to the car shows that it was

likely thrown from the passenger window as the vehicle was coming to a stop. This conclusion is more credible than the suggestion that the bag was knocked out of the vehicle by Deputy Harmon as he exited the vehicle. Although he was certainly excited from the action, it is likely that he would have noticed the bag had he knocked it onto the ground outside the passenger door. Moreover, if he had inadvertently knocked it out of the car, it would not have likely ended up where they found it—on the front tire side of the passenger door. But it is reasonable to conclude that the bag ended up in that location after being thrown forward through the passenger window as the car was stopping or after it stopped.

Any suggestion that Deputy Carroll or Deputy Harmon threw the bag out of the vehicle lacks credibility. They had no reason to "plant" the bag outside the vehicle. They thought their previous stop was authorized and knew that their drug canine would hit on the bag even if it was left in the car. To suggest that while wrestling with Defendant inside the car and chasing him on foot, they considered the constitutional ramifications of Defendant "abandoning the contraband" for purposes of increasing the likelihood that their search and seizure met constitutional muster is, quite frankly, ludicrous.

For purposes of the pending motion, the Court, as factfinder, finds based upon the evidence, both direct and

circumstantial, that Defendant tossed the bag out of the window, hoping that it would somehow go unnoticed.

DISCUSSION AND CONCLUSIONS OF LAW

Defendant and Weeks were indicted for possession with intent to distribute cocaine base in an amount in excess of 280 grams. Weeks pled guilty to a superseding information that charged her with the misdemeanor offense of possession of marijuana. Defendant therefore remains as the sole Defendant under the original indictment, and he now seeks to suppress the drugs found in the bag the deputies seized.

Preliminarily, the Court finds that probable cause existed to detain Defendant for following too closely. While one may quibble with the seriousness of the moving violation and speculate that it was mere pretext for an investigative drug search, the record supports a finding of probable cause to stop the vehicle initially, and insufficient evidence exists to establish the stop as pretextual. The closer question is whether the stop was unreasonably prolonged so as to violate Defendant's Fourth Amendment rights.

The legal principles to be applied here are clear. They rest upon the fundamental foundation that "once an officer has briefly stopped a motor vehicle operator for the purpose of issuing a traffic violation (*i.e.*, a ticket)," the Fourth Amendment permits the officer to detain the vehicle's occupants

"only if the officer can point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999) (quoting *United States v. Griffin*, 109 F.3d 706, 708 (11th Cir. 1997) (per curiam)). The detention must "last no longer than is necessary to effectuate the purpose of the stop," and "the scope of the detention must be carefully tailored to its underlying justification.'" *Id.* at 1220 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). Generally, this rule allows an officer conducting a routine traffic stop to obtain the "driver's license and vehicle registration, run a computer check [on the license and vehicle], and issue a citation." *Id.* at 1219. Prolonging the detention for additional questioning beyond that related to the initial stop is permissible if: (1) the officer "has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring," or (2) "the initial detention has become a consensual encounter." *Id.* at 1220.

In this case, the Government makes two arguments in opposition to Defendant's contention that the stop was unconstitutionally prolonged. First, the Government contends that the questioning unrelated to the reason for the initial stop and the subsequent canine alert did not unreasonably prolong the detention. Second, even if the detention were

prolonged beyond what it would have been had a citation simply been issued, the Government maintains that Deputy Carroll had an objectively reasonable and articulable suspicion that illegal activity had occurred or was occurring.  The Court addresses each of these arguments in turn.

Although the principles to be applied may be clear, there are no bright-line rules for applying them.  Instead, the appellate courts have provided illuminating guidance to those on the front lines to evaluate "the totality of the circumstances." *See United States v. Purcell*, 236 F.3d 1274, 1279 (11th Cir. 2001) (evaluating the constitutionality of a traffic stop delay "in the context of the totality of the circumstances").  Thus, if an officer asks the driver of a vehicle questions that are completely unrelated to the initial stop, that does not necessarily convert the stop to an unconstitutional detention. *Id.* at 1280.  The key is whether the unrelated questions prolong the stop.  As long as the unrelated questions are asked during the process of obtaining legitimate information for citation purposes, such questions by suspicious officers are permissible. *See id.* (finding that police may question occupants about subjects unrelated to motor vehicle stop while computer license check is in progress or while citation is being prepared). Moreover, an officer may have a drug dog walk around a vehicle and sniff for drugs during a routine traffic stop as long as the

occupant of the vehicle is not detained any longer than necessary for purposes of the routine traffic stop. *United States v. Holloman*, 113 F.3d 192, 196 (11th Cir. 1997) (per curiam). The key again is whether the canine walk-around was done during the same time frame as the routine traffic stop. *Id.*

In this case, the Court finds that the additional unrelated questioning and the canine walk-around prolonged the search beyond the time it would have lasted had the officer simply issued the traffic citation. Granted, the detention was only prolonged by approximately twelve minutes. But those twelve minutes of detention were completely unnecessary to the traffic citation. For an unconstitutional intrusion to be determined solely on the number of minutes one had to endure the intrusion would come close to reducing constitutional analysis to bright-line rules. The appellate courts have cautioned against such an outcome. Therefore, the Court rejects the Government's argument that no constitutional violation occurred because the detention was not unreasonably prolonged in duration.

The Government also argues that even if the detention were prolonged, Deputy Carroll had an objectively reasonable suspicion of illegal activity. Therefore, the Government contends no Fourth Amendment violation occurred. A variety of factors may contribute to the formation of an objectively

reasonable suspicion of illegal activity.  "Among those factors that have justified further questioning are having no proof of ownership of the vehicle, having no proof of authority to operate the vehicle, [ ] inconsistent statements about destination . . . driving with a suspended license, and reluctance to stop." *Pruitt*, 174 F.3d at 1220 (citations omitted).  But it is clear that an officer cannot engage in a fishing expedition based solely on a hunch that illegal activity may be afoot.

In *Knowles v. Iowa*, 525 U.S. 113, 118 (1998), the Supreme Court invalidated a car search under the Fourth Amendment because "[o]nce [the defendant] was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained.  No further evidence of excessive speed was going to be found either on the person of the offender or in . . . the car."  Applying *Knowles*, the Eleventh Circuit invalidated a search under circumstances similar to those presented here.  *Pruitt*, 174 F.3d at 1220-21.  After the defendant was stopped for speeding, he was placed in the back of the patrol car where the officer questioned him about the purchase price of the vehicle, where his family lived, the identity of other vehicle occupants, and his relationship to those occupants.  *Id.* at 1218.  After he refused to consent to the search of his vehicle, a drug dog was summoned and alerted

to drugs in the vehicle.  *Id.*  The *Pruitt* Court found the length of the search exceeded that of a routine traffic stop and that the scope of the questioning was not based upon a reasonable and articulable suspicion of illegal activity.  *Id.* at 1221.

The deputy here acknowledges that prior to the canine alert on the vehicle and his unrelated questioning of Defendant and Weeks, he only had an undefined suspicion that something was not quite right.  He had no specific articulable suspicion—only a vague hunch.  The vagueness of his hunch is understandable.  All he knew was that the driver had followed another vehicle too closely, appeared to change lanes abruptly, and that both the driver and the passenger appeared nervous.  These observations are simply insufficient to warrant an extension of a routine traffic stop to allow for questioning unrelated to the traffic offense and to permit a drug dog to sniff the car.[3]

The ultimate question is: "What are the legal consequences of the unconstitutionally prolonged stop?"  Defendant argues that anything that happened after the point that the stop was

---

[3] The Court hastens to emphasize the narrow nature of today's finding regarding the prolonged nature of the traffic stop.  The Court does not hold that it is inappropriate to ask questions unrelated to the traffic stop as long as the questioning does not prolong the routine traffic stop.  The Court also does not hold that it is inappropriate to have a trained canine conduct an outside-the-vehicle sniff as long as it is done during the time reasonably necessary for completing the routine traffic stop.  The Court simply finds that when the unrelated questioning and canine alert occur after the expiration of the time necessary for the routine traffic stop, an officer must have a reasonable articulable suspicion of illegal activity to prolong the detention.

unconstitutionally prolonged is off-limits.  Thus, he seeks to suppress the drugs that Defendant threw from the car onto the public highway while he was fleeing from the scene.  This argument ignores the fact that the drugs were not seized as a result of the prolonged search, but they were eventually discovered when Defendant abandoned them by throwing them out of the car.  Any causal connection between the prolonged stop and the discovery of the drugs is tenuous at best.

Once Defendant threw the drugs from the car onto the highway, he no longer had a privacy interest in those drugs deserving of Fourth Amendment protection.  The Fourth Amendment's protections against warrantless searches and seizures do not apply "unless the individual manifested a subjective expectation of privacy in the object of the challenged search, and society is willing to recognize that expectation as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (internal quotation marks omitted).  "[T]he critical inquiry is whether the person prejudiced by the search . . . voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *United States v. Winchester*, 916 F.2d 601, 603 (11th Cir. 1990) (emphasis omitted) (internal quotation marks omitted).  Courts have found

that individuals abandoned items and thus relinquished any reasonable expectation of privacy in them when the items have been thrown away or exposed to the public. *See, e.g., California v. Greenwood*, 486 U.S. 35, 37, 40 (1988) (holding that the Fourth Amendment does not prohibit the "warrantless search and seizure of garbage left for collection outside the curtilage of a home" because there could be no reasonable expectation of privacy in garbage left on a public street); *United States v. Segura-Baltazar*, 448 F.3d 1281, 1287-89 (11th Cir. 2006) (finding no reasonable expectation of privacy in trash located on complainant's own property because "the trash was sufficiently exposed to the public" and left out for collection); *United States v. Hall*, 47 F.3d 1091, 1097 (11th Cir. 1995) (finding no Fourth Amendment violation when company "did not take sufficient steps to restrict the public's access to its discarded garbage"); *United States v. McKennon*, 814 F.2d 1539, 1546 (11th Cir. 1987) (per curiam) (noting that individual had no expectation of privacy in a bag because "when a claimant relinquishes possession and disclaims ownership of an article of luggage, any expectations of privacy become illegitimate"). Defendant lost any Fourth Amendment protections associated with the drugs once he threw them out of the car and onto the public highway. Accordingly, the drugs shall not be suppressed.

CONCLUSION

For the reasons explained in this Order, Defendant's motion to suppress the drugs retrieved from the public highway after Defendant threw them from the car while fleeing from the deputies is denied.


IT IS SO ORDERED, this 18th day of December, 2013.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE