IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

UNITED STATES OF AMERICA,      *

vs.      *

           CASE NO. 4:13-cr-24 (CDL)

LORENZO HICKSON,      *

    Defendant.      *

_____

O R D E R

Defendant Lorenzo Hickson filed a motion for reconsideration of the Court's Order denying his motion to suppress (ECF No. 53). That Order focused on the traffic stop of Defendant's vehicle, finding that it was unconstitutionally prolonged, but that illegal drugs seized when Defendant abandoned them by throwing them from his car while fleeing the scene should not be suppressed. Defendant now focuses on the conduct of the police when they tried to stop Defendant as he fled the scene. Defendant argues that this conduct resulted in a second seizure of Defendant which was unsupported by probable cause and thus violated the Fourth Amendment. Defendant through his motion for reconsideration seeks to have the Court suppress the illegal drugs as fruit of this second allegedly unconstitutional stop under the authority of *California v. Hodari,* 499 U.S. 621 (1991). As explained in this Order, the authority cited by Defendant does not support his argument that

the drugs were discovered as a result of a second illegal seizure. Moreover, a thorough analysis of the "fruit of the poisonous tree" principles confirms the correctness of the Court's denial of Defendant's motion to suppress relating to the unconstitutionally prolonged traffic stop. For the following reasons, Defendant's presently pending motion for reconsideration (ECF No. 53) is denied.

PREVIOUS ORDER DENYING MOTION TO SUPPRESS

The Court previously found that Defendant's traffic stop was unreasonably extended without probable cause or reasonable suspicion in violation of the Fourth Amendment. But the Court concluded that the drugs seized after Defendant fled from the scene in his vehicle and abandoned the drugs by throwing them out the window onto the public highway should not be suppressed. *United States v. Hickson,* No. 4:13-cr-24, 2013 WL 6712902 (M.D. Ga. Dec. 18, 2013) (ECF No. 51).

FACTS

To ease future review, the Court repeats verbatim in this Order the factual findings made in its earlier Order denying Defendant's motion to suppress. As stated in that Order, the facts surrounding the initial stop of Defendant's vehicle are

largely undisputed.[1]   On a clear, sunny October afternoon, Defendant was driving a black Nissan on I-185 South in Harris County, Georgia.   Myesha Weeks was riding in the passenger seat. At the same time, Harris County Deputy Roger Carroll was parked in the median of I-185 observing traffic for alleged moving violations and for possible drug interdiction.   Parked alongside Deputy Carroll in the median in a separate law enforcement vehicle was Deputy Joe Harmon, a canine officer with the Harris County Sheriff's Office.   Zoe, a drug-sniffing dog, accompanied Deputy Harmon in his vehicle.

At approximately 2:40 P.M., Deputy Carroll observed Defendant's vehicle make an abrupt lane change upon passing Deputy Carroll's and Deputy Harmon's parked vehicles.   Deputy Carroll decided to pursue Defendant's vehicle.[2]   As Deputy Carroll followed Defendant's vehicle, he observed the vehicle traveling at approximately sixty-five to seventy miles per hour within one to two car lengths of the vehicle immediately in front of it.   Based on this observation, Deputy Carroll decided to make a traffic stop because Defendant's vehicle was following the vehicle in front of it too closely.   Defendant's vehicle

---

[1]  The Court held an evidentiary hearing on September 4, 2013 and a supplemental hearing on December 17, 2013.   The Court's factual findings are based on evidence introduced at those hearings.
[2]  When Deputy Carroll began his pursuit, the dashboard camera in his vehicle activated.   The entire pursuit and encounter were recorded. The Court's findings regarding the times for certain acts are based upon the time reflected on the recording.

pulled into the emergency lane, coming to a stop at approximately 2:42 P.M.

Deputy Carroll exited his vehicle and approached Defendant's vehicle. He informed Defendant that he pulled him over for "following too close." Both Defendant and his passenger, Weeks, appeared "very nervous." Weeks identified Defendant as her brother. Deputy Carroll obtained information from the vehicle's tag and from Defendant's license, which was routine procedure for traffic stops arising from moving violations. He relayed the information to the dispatch officer who ran a check on the tag and the license. The license check revealed that Defendant was on parole for a criminal offense. But the checks were otherwise unremarkable. Deputy Carroll had this information by 2:48 P.M. As of that time, he had all of the information he needed to issue a citation for following too closely. Thirty seconds later, he completed the "warning citation" for the traffic violation.

Up until this time, Deputy Carroll did not have a reasonable suspicion to believe that Defendant's vehicle contained illegal contraband. He thought the situation looked "fishy" and had a "hunch" that something illegal might be in the vehicle based upon the demeanor ("nervousness") of the Defendant and his passenger. After he learned that Defendant was on parole, Deputy Carroll summoned Deputy Harmon to the scene to do

a canine search on the outside of the vehicle.  He made the call
at approximately 2:51 P.M.

After Deputy Carroll completed the process for the traffic
citation and before Deputy Harmon arrived at 2:54 P.M., Deputy
Carroll had Defendant exit the vehicle.  He began asking
Defendant and Weeks questions unrelated to the traffic citation.
He asked Defendant for consent to search the vehicle, which
Defendant refused.  He frisked Defendant for weapons and found
nothing except for $500 in cash.  He questioned Defendant about
his employment.  At approximately 2:56 P.M., Weeks stepped out
of the vehicle.  Deputy Carroll asked for her identification
and ran a license check on her.  He also explained that he was
involved in "drug interdiction."  Weeks retrieved her purse, a
sweater, and a bag from the rear seat of the car.  Deputy
Carroll sought consent to search the items, but Weeks declined.
Deputy Carroll then directed her to return the items to the
vehicle, contending that he did so for officer safety.  It was
later discovered that the bag Weeks retrieved from the car,
which she subsequently returned to the car at Deputy Carroll's
direction, contained the illegal drugs that Defendant seeks to
suppress.  After the items were returned to the car, Deputy
Carroll informed Defendant and Weeks that the drug dog would
conduct a sniff surveillance of the vehicle.  Upon being
informed of the search and that the deputies were not interested

in arresting them for small quantities of drugs, Weeks stated that she had a small amount of marijuana in her purse.

At approximately 3:00 P.M., Deputy Harmon conducted the canine search. During that search, Defendant ran to the car, entered it, and attempted to flee. Approximately eighteen minutes elapsed between the time Deputy Carroll stopped Defendant's vehicle and the time Defendant attempted to flee. Defendant's detention was prolonged approximately twelve minutes due to Deputy Carroll's suspicions that the vehicle contained illegal contraband. Had Deputy Carroll simply given Defendant the warning for following too close, Defendant would have been detained approximately six minutes. Instead, it took approximately eighteen minutes to begin the canine search of the vehicle.

As Defendant began to flee, Deputy Harmon jumped through the open passenger-side window and wrestled with Defendant while the car traveled down the highway. He ultimately caused Defendant to stop the vehicle. Deputy Carroll chased the car on foot and indicated at the scene that he saw something being thrown from the car. After the deputies secured Defendant, they found a brown paper bag outside the right passenger door of the car on the public highway. The deputies recovered the bag and discovered that it contained what the Government alleges to be cocaine base. It appears undisputed for purposes of the present

motion that the bag containing the cocaine base is the same bag that Weeks removed earlier from the car and returned to the car after being directed to do so by Deputy Carroll.

A genuine factual dispute exists as to how the bag containing the drugs got from inside Defendant's car onto the public roadway. Neither Deputy Carroll nor Deputy Harmon actually saw Defendant throw the bag out of the passenger side window. But persuasive circumstantial evidence supports that conclusion. The bag was in the vehicle when Defendant fled the scene. The bag was either on the front passenger seat or just behind the front passenger seat. The bag was within reach of the Defendant as he drove the car. Even if one of his arms was partially pinned down by Deputy Harmon during the tussle, Defendant still retained the capability to reach a bag located on either the front passenger seat or directly behind that seat. Deputy Carroll saw something being thrown out of the passenger window, and Deputy Harmon saw Defendant reaching for something in the area of the passenger side of the car. Only Deputy Harmon and the Defendant were in the car. No one else could have thrown anything from the vehicle. The Court found Deputy Carroll and Deputy Harmon to be credible witnesses. The location of the bag in relationship to the car shows that it was likely thrown from the passenger window as the vehicle was coming to a stop. This conclusion is more credible than the

suggestion that the bag was knocked out of the vehicle by Deputy Harmon as he exited the vehicle.   Although he was certainly excited from the action, it is likely that he would have noticed the bag had he knocked it onto the ground outside the passenger door.   Moreover, if he had inadvertently knocked it out of the car, it would not have likely ended up where they found it—on the front tire side of the passenger door.   But it is reasonable to conclude that the bag ended up in that location after being thrown forward through the passenger window as the car was stopping or after it stopped.

Any suggestion that Deputy Carroll or Deputy Harmon threw the bag out of the vehicle lacks credibility.   They had no reason to "plant" the bag outside the vehicle.   They thought their previous stop was authorized and knew that their drug canine would hit on the bag even if it was left in the car.   To suggest that while wrestling with Defendant inside the car and chasing him on foot, they considered the constitutional ramifications of Defendant "abandoning the contraband" for purposes of increasing the likelihood that their search and seizure met constitutional muster is, quite frankly, ludicrous. The Court previously found based upon the evidence, both direct and circumstantial, that Defendant tossed the bag out of the window, hoping that it would somehow go unnoticed.

Defendant and Weeks were indicted for possession with intent to distribute cocaine base in an amount in excess of 280 grams.  Weeks pled guilty to a superseding information that charged her with the misdemeanor offense of possession of marijuana.  Defendant therefore remains as the sole Defendant under the original indictment, and he sought to suppress the drugs found in the bag the deputies seized.  After the Court denied that motion, he filed the present motion for reconsideration.

DISCUSSION

Defendant does not point to any new evidence in support of his motion for reconsideration.  Nor does he make any new arguments that were not available to him before the Court entered its previous ruling on his motion to suppress.  Instead, Defendant seeks to have the Court consider a well-established Supreme Court precedent that Defendant suggests may have been overlooked when the Court denied his motion to suppress. Defendant argues that when he threw the drugs from his vehicle while fleeing the scene, he was actually subjected to a second seizure by the officer who was hanging onto the passenger door and window imploring Defendant to stop the speeding vehicle. Defendant maintains that since the police had no right to detain him for the traffic stop, they had no right to try to stop him from fleeing the scene.  Therefore, when he finally stopped

after his attempted flight, he was subjected to an unconstitutional seizure and the drugs thrown onto the highway during that pursuit should be suppressed under the principles announced by the Supreme Court in *Hodari*. Contrary to Defendant's argument in support of his motion for reconsideration, *Hodari* actually supports the Court's previous ruling denying Defendant's motion to suppress.

In *Hodari,* the Supreme Court held that illegal drugs abandoned by the defendant while he was fleeing from police officers were not the fruit of a seizure because no seizure occurred until the police eventually tackled the defendant. 499 U.S. at 629. A mere "show of authority" attempting to enjoin the defendant to halt with which the defendant did not comply was not sufficient to constitute a seizure for Fourth Amendment purposes. *Id.* Therefore, *Hodari* does not support Defendant's argument for reconsideration that he was actually seized a second time while fleeing from the scene. Defendant was not actually seized again until the car came to rest and the officers secured him. And the illegal drugs had been abandoned before that second seizure. Similar to the facts in *Hodari,* the drugs were abandoned during Defendant's flight, and consistent with the holding in *Hodari,* their abandonment precludes any argument for suppression.

The Court acknowledges that a theoretical academic argument could be made that a seizure occurred each time the officer, hanging on for dear life as Defendant sped down the highway, physically touched Defendant while grabbing for him in an attempt to make him stop the vehicle. *See Hodari,* 499 U.S. at 624-625. But as recognized in Hodari, "[t]o say that an arrest is effected by the slightest application of physical force, despite the arrestee's escape, is not to say that for Fourth Amendment purposes there is a *continuing arrest* during the period of fugitivity." *Id.* at 625 (emphasis added). For example, if an officer lays his hands upon a defendant, but the defendant breaks away and then abandons the contraband, "it would hardly be realistic to say that that disclosure had been made during the course of an arrest." *Id.* at 625. Similarly, even if one accepts the argument that the Defendant in the present case was seized when the officer touched him during his flight, it also follows that each time the Defendant broke free from the officer's touch and continued his flight, he was not under arrest until he was touched again. Since the Defendant abandoned the drugs during this flight, which may have theoretically included random intermittent instances of touching, the Court finds that "it would hardly be realistic to say that that [abandonment occurred] during the course of an

arrest." *Id.* Defendant's motion for reconsideration is accordingly denied.[3]

Although Defendant's motion for reconsideration lacks merit, it did cause the Court to reexamine the discussion in the previous order regarding whether the seized drugs were the fruit of the tainted vehicle stop. Upon further reflection, the summary nature of that discussion may not be helpful for future review. Although perhaps unnecessary, the Court finds it appropriate to elaborate on its "fruit of the poisonous tree" rationale in this Order.

"As a general rule, the evidence gathered as a result of an unconstitutional stop must be suppressed." *United States v. Chanthasouxat,* 342 F.3d 1271, 1280 (11th Cir. 2003) (citing *Wong Sun v. United States,* 371 U.S. 471, 484-85 (1963)). However, evidence is not "'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." *United States v. Delancy,* 502 F.3d 1297, 1309 (11th Cir. 2007) (quoting *Wong Sun,* 371 U.S. at 488); *see also*

---

[3] Even assuming that Defendant abandoned the drugs during a second seizure and that the second seizure was not justified under the Fourth Amendment, Defendant's motion to suppress would still be denied because the drugs were not the fruit of a tainted seizure. Instead, for reasons similar to those supporting the denial of Defendant's motion to suppress based upon the first seizure and as explained more fully in the remainder of this Order, the drugs likewise should not be suppressed in relation to a second seizure because they were abandoned in a manner such that the taint of a second theoretical seizure would have been purged just as the taint of the first seizure was purged. The abandoned drugs, therefore, would not be deemed to be fruit of a poisonous tree regardless of which seizure they grew from.

*Chanthasouxat,* 342 F.3d at 1280 (citing *United States v. Santa,* 236 F.3d 662, 676 (11th Cir. 2000)).    Instead, it matters "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.*  In the present case, the Court had to determine whether the abandonment of the drugs was "'sufficiently an act of free will to purge the primary taint of the unlawful invasion,' or, alternatively, whether the causal connection had 'become so attenuated as to dissipate the taint.'"  *Delancy,* 502 F.3d at 1309 (quoting *Wong Sun,* 371 U.S. at 486-87).  The Court found in its previous Order that Defendant voluntarily abandoned the drugs and summarily concluded that his flight from the scene broke the causal chain between the illegal stop and the subsequently seized drugs.  *See Hickson,* 2013 WL 6712902 at *5 (M.D. Ga. 2013) (ECF No. 51 at 14-15).   The Court confirms these findings based upon the following analysis.

The issue of whether the taint of an illegal search has been purged "is a fact-specific question, and no single fact is dispositive." *Delancy,* 502 F.3d at 1309.  In cases involving consent by a defendant to search after an illegal arrest, courts have focused on "three factors in determining whether a defendant's consent was tainted by his illegal arrest:  '(1) the

13

temporal proximity of the seizure and the consent, (2) the presence of intervening circumstances, and, particularly, (3) the purpose and flagrancy of the official misconduct.'" *Delancy,* 502 F.3d at 1309 (citing *Santa,* 236 F.3d at 677). Although Defendant never consented to the search in the present case, the Court finds that this taint analysis can be applied to cases of abandonment of evidence. In this case, Defendant abandoned the illegal drugs shortly after he was illegally detained. This factor weighs in Defendant's favor, supporting a finding that the taint from the illegal stop has not been purged. The second factor, intervening circumstances between the time of the stop and the abandonment of the drugs, however, strongly favors a finding that the taint has been purged. As previously explained, Defendant fled from the scene, ignoring all commands that he stop and with a police officer hanging onto the car through the passenger window. During that flight, Defendant threw the drugs onto the public highway. The Court found previously and confirms here that Defendant's flight and abandonment of the drugs broke any causal connection between the illegally prolonged stop and the ultimate discovery of the abandoned drugs. These intervening circumstances support a finding that any taint from the illegal stop was purged by Defendant's subsequent abandonment of the drugs during his flight from the scene. As to the third factor, the nature of

the illegal stop, the fact that the stop was prolonged beyond the bounds permitted by the Fourth Amendment should carry some weight in Defendant's favor, but the Court finds that the nature of the violation should also be considered in determining whether on balance the taint from the violation was purged. Without diminishing the significance of any constitutional violation, the Court does observe that some violations are more flagrant than others. The Court found that the initial stop of Defendant was justified but that it lasted approximately twelve minutes longer than permitted by the Fourth Amendment under the circumstances. Defendant's Fourth Amendment rights were violated because he was detained longer than was necessary to write the traffic citation. The purpose for prolonging the stop was certainly not to force Defendant to flee from the scene and abandon the drugs. Defendant's subsequent flight from the scene and decision to throw the drugs onto the highway were completely unforeseeable. The Court finds that the nature of the constitutional violation does not cause the balance to shift in favor of the Defendant in determining whether the taint of the illegal stop was purged.

Taking all three of these factors together and evaluating them as a whole, the Court finds that the illegal stop did not taint Defendant's voluntary abandonment of the drugs. That abandonment did not result from the officers' exploitation of

the illegal stop, but instead occurred by means sufficiently distinguishable from the stop. Consequently, the abandonment of the drugs was purged of the illegal stop's primary taint. Accordingly, the Court confirms its previous ruling that the drugs shall not be suppressed as "fruit of the poisonous tree."

## CONCLUSION

For the reasons explained in this Order, Defendant's motion for reconsideration of the Court's previous order denying Defendant's motion to suppress (ECF No. 53) is denied.

IT IS SO ORDERED, this 13th day of February, 2014.

S/Clay D. Land

CLAY D. LAND
UNITED STATES DISTRICT JUDGE